Nora Douglas-Flowe, Council for Counter-Targeted Enterprises Ltd. Ltd. Michael A. Jones, Council for Reliability Michael Younessi Douglas-Flowe, Council for Counter-Targeted Enterprises Ltd. Michael A. Jones, Council for Counter-Targeted Enterprises Ltd. Michael A. Jones, Council for Counter-Targeted Enterprises Ltd. Michael A. Jones, Council for Counter-Targeted Enterprises Ltd. Michael A. Jones, Council for Counter-Targeted Enterprises Ltd. We're here this morning because the bankruptcy court confirmed a plan that should have never been confirmed. It was an unconfirmable plan. In hindsight, Diamond probably should have simply appealed that order and come before your honors. However, Diamond believed, because of economic reasons and timing reasons, that the more appropriate course of action at the time was to file a motion for reconsideration, which Diamond did, and which the bankruptcy court considered on January 17, 2018. Fast forward now a year and a half. Before you do that, you also didn't appeal from the order granting the reconsideration, right? That is correct, your honor. And in hindsight, looking back, I don't believe that order was entered correctly. And so I think an appeal would have been successful from that order. But again, because of the economics here, the order was good enough for Diamond in that it protected Diamond's rights, or at least Diamond believed at the time that it protected Diamond's rights and was fairly unequivocal about how it protected Diamond's rights and modified the plan to protect Diamond's rights. So whether the plan was lawful at that point or not, you'd probably dispute that, your client was willing to live with it. That is correct. And at the time, there were plenty of discussions about whether to appeal that or not, and the decision was ultimately made not to appeal that January 29, 2018 order. Parties continued to litigate the non-dischargeability action. In connection with that, Diamond discovered new-to-it evidence that this debtor had lied on his schedules and statement of financial affairs in numerous aspects. Didn't disclose litigation, didn't disclose assets, didn't disclose companies, didn't disclose community property. Serious problems. So Diamond filed a motion to revoke the confirmation under 1144. That motion, or that complaint, was filed within the 180-day deadline as to the reconsideration order, outside of the 180-day deadline as to the original order entered in December on the debtor's amended plan. Let me ask you this. Did you find or do you allege that there was fraud committed in respect of the modified plan that was not also committed in respect to the original plan? Do you see what I'm saying? I do, Your Honor, and I think the orange tree, I think, discusses that to some extent. And I think the fraud that was discovered was really endemic as to, I guess, both plans, the original plan and the modified plan, because what it was is it was that all the underlying facts, or not all, that's an exaggeration, the important material underlying facts that underlined the original plan and the amended plan simply were false and were not correct. So the allegation... There wouldn't be a basis, assuming this is even possible, to set aside the confirmation of the amended plan for fraud, but not set aside the confirmation of the first plan. I don't believe so, Your Honor. If the fraud that we believe we've discovered is proven, I think it makes any of those plans dead in the water. So we fast forward now, and now we're here, and in my statement of issues on appeal, I think I phrased the issue trying to be as simple as possible. Look, does the 180 days start from the December order, or does it start from the January order? When this court granted the motion for leave to appeal, I think this court actually did, I'm not surprised, but this court did a better job of sort of stating what the issue was. And this court said, look, the issue is whether the Chapter 11 plan modifications set forth in the reconsideration order constitute substantive modifications of the confirmed plan and thus extend the 180 days. You realize that, of course, that's not binding on us, right? I do. That's going to be the motions panel. So if that turns out not to be true, we don't have to... I understand, Your Honor, though I think that is an accurate assessment of the situation. And I think it's important because I think what we should be arguing and what I'm going to argue today is, look, was this order entered January 29 a substantive modification, or was it simply a clarification or an interpretation of the prior order? And I think if Your Honors conclude that it was a substantive modification, which I think the plain language of the plan shows, then you have to conclude that these 180 days started from the second order. So here we have a plan. Going back to why it's a substantive plan, that's where I sort of got sidetracked. This is a substantive modification, and I think reading... You can read the order, and I think you can tell it's a substantive modification, but I think it's even more nuanced than that. You read the transcript of the hearing. We argued for about an hour in front of Judge Wallace down there, and I think Judge Wallace himself recognized that this was a substantive modification, and he did so when, if Your Honor read the plan, which was an interesting plan to say the least, it had three proposed treatments for Diamond. Treatment A, Treatment B, and Treatment C. And Diamond was supposed to choose one, right? Well, Diamond didn't like any of them, didn't choose any of them, objected to the plan and opposed confirmation. Of course, the plan said in there, look, you don't choose any of them, you get Treatment A. Okay, that's what we were opposing confirmation on. When it came down to reconsideration, the reconsideration hearing on January 17th, the judge sat there and said, he focused in on the prayer of my reconsideration motion that said, look, this plan should never be confirmed. You have to revoke confirmation. If you're not going to go that far, at least throw my client a bone and carve my client out of this bad plan so that it doesn't adversely affect my client. And the judge latched on to that second prayer in the alternative and said, that's exactly what I'm going to do. And he said, and he wasn't so concerned about it because he said, look, you noticed your reconsideration motion to all creditors, and he said, look, if one of these creditors had a problem with it, he calls it Treatment D, the new plan, Treatment D. That's the modified plan. If somebody has a problem with Treatment D, they could come in here and say something. And he said, if they did, that would be, I would value their objections. That would be something I'd want to really hear. But nobody's here. Did you notice your motion to all creditors? We did, Your Honor. And that's really important because we're going to move on, and you see in my briefing, and I'm not harping on it right now, but in my briefing, I made a big point of sort of two axiomatic principles. The first is that there can only be one confirmation order, and Orange Tree tells us that. The second is that the only way you can modify a confirmation order, there can only be one, is through 1127, 1127B specifically. And I think you're going to hear counsel for the appellee come up here, and he's going to latch on to Judge Wallace's order dismissing this cause of action, which says, well, it couldn't have been a modification because it wasn't pursuant to 1127B. Which Orange Tree says also. Right. Orange Tree says the modification in that case wasn't done pursuant to 1127. 1127B, yes, exactly. And so Judge Wallace says, look, my modification wasn't according to 1127B. But that's a little too cute because the only way a plan can be modified is pursuant to 1127. And so I think that puts the cart before the horse, and that's the way I argue it. I guess my point is I think that's exactly the same thing the Ninth Circuit said in 1127, excuse me, in Orange Tree, and we at least feel careful in what we say about the Ninth Circuit's prior decisions. Well, that's right. And let's talk about Orange Tree. Orange Tree is the big elephant in the room here. So in Orange Tree, the distinction in my view is whether the order on the 29th was a substantive modification or whether it was a clarification or interpretation. Look at Orange Tree. Orange Tree looked at that order, that second order, and it was comfortable that this was a clarification or interpretation. It says, you don't even need this order. The judge said, look, you should have just asked for interpretation or clarification. And now substantive modification isn't defined in the Bankruptcy Code. It's not defined anywhere. I scratched my head. I looked in Black's Law Dictionary. It's not defined there either. But I think how it relates to interpretation or clarification is how you understand, how you're going to understand what a substantive modification is. Because there are a number of cases under 1127 that talk about, is this a modification or is this an interpretation or clarification? And the reason it's important is because in a corporate debtor, after the plan is substantially consummated, you can't modify the plan, but you can interpret it and you can clarify it. And so there's litigation as to whether that second order is interpreting it or modifying it. And so my definition of what a substantive modification is, is substantive modification begins where interpretation or clarification end. And so I think when you look at the order that was entered on the 29th, you're going to see that this wasn't an interpretation. This wasn't a clarification. This was treatment D. This was a modification. And so whether or not the niceties of Section 127 were fully complied with, although I would submit to your honors that they were substantially complied with. Look, everybody got notice of the motion for reconsideration. The judge went way out of his way to make sure the debtor agreed to the modification, because you can't tell an individual debtor that they have to be forced to live under this modified treatment D. And the debtor agreed. And if you look, it wasn't cited in my brief, but there is a case. It's FCX, Inc., out of the Fourth Circuit, 853 Fed 2nd 1149. And the cert was denied by the Supreme Court. And it talks about the requirements of a modification of a confirmed plan under 1127B. And it's notice, right? We have that. It's a hearing. We had that. It's opportunity of impaired creditor to object. We had that. And it's assessment by the Bankruptcy Court that the modified plan meets the requirements for confirmation, which although I think he probably ultimately was wrong, the judge made here. So I think Judge Wallace actually substantially complied with 1127, even though no one appealed that order. And I don't think that's an issue before this court. If you stop now, you've got three and a half minutes. I will stop, Your Honor. Thank you. Thank you. Sirs, good morning. Michael Jones representing the appellee, Michael Yannesi, who is present and in court today. So Judge Ferris. I was making reference here to the white elephant in the room. I always thought the white elephant in this room was how did you get this plan confirmed in the first place? Sir, I'm sorry. I'm not sure I understand your question. Well, that's kind of unusual provisions that, you know, distinction as to which one applied. This general requirement of what it is you can do to people, creditors under in Chapter 11, what you can impose upon them, you know, cram down, that type of thing. It didn't seem like any of these proposed treatments remotely fit any of that pattern. So, sir, under Title 11, Chapter 11, of course, we have the ability to propose a plan that provides for treatment of creditors. And by giving the creditor, Diamond here, alternate treatments, our anticipation was that from those three, they would select the one that they wanted to go with. Wait a minute. I'm sorry. No, you go first. You start. Well, one of them was you're going to be deemed to have foregone a right to determine a debt to be non-dischargeable. And that's the one you're going to be stuck with if we deem you to have consented because you don't vote, right? That's correct. How does that possibly square with commercial Western finance? Well, sir, they wouldn't have to pick choice A. That was by consent. But the whole point was the judge later found that consent concept was faulty, right? Well, the consent was ultimately found by the trial judge. But how can you possibly dispose of somebody's litigation rights in a plan? I mean, how is that remotely due process? Well, sir, it would only be done by consent. We're speaking in circles. You can move on. Let me try it a different way. Yes, sir. There is a set of treatments you could propose for this creditor that you could cram down on them, okay? None of your options, A, B, and C, comply with the cram down treatment in my view. All of them are less than this creditor could insist on. But your plan says you only get to choose from this menu. Am I wrong about that? Well, sir, choice B, that was one of the alternate treatments, did provide for a full payment of the claim. So there wouldn't have been a discounting of any way of that debt had he selected B. But then it said continuing payments until the debt is discharged. Or satisfied. No, but it said discharged. Even that provision wasn't clean, it seemed to me. There were hooks in the language there. I'm not sure it would pass the cram down test standing alone. Well, sir, our goal here, of course. Counsel, can I interrupt you? We have interns in the room, and they're liable to infer from you referring to Judge Ferris as sir that that's appropriate. It's not. I'm terribly sorry. I know you're not being disrespectful or intentionally disrespectful, but this is a teaching moment for the interns who are watching. You would always refer to a judge as a judge. As a judge. Or a justice in the appropriate case. I'm not a justice here. My apologies to you. We're not looking for an apology. I'm just looking for you to. In my military life, I work as a judge advocate, and that's really hammered into us. I understand. So, Judge Ferris, our goal in the plan was to provide for alternate treatments that could be selected by Diamond, as to what it is they wanted to do. Choice A did include some creative elements, but it was designed to be accepted by consent and not forced upon them. It was kind of our expectation. How you could possibly have concluded that was consent is beyond me. And we're expressing some incredulity. So if this is, I don't know what the rest of the panel thinks. Judge, I can't imagine how the concept of consent could work with, we're going to deem you to have accepted something that gets rid of a nondischargeability claim. Was there consent? Judge Wallace ultimately found that they consented through their subsequent motion that they filed. So in the motion for reconsideration, the request was made that they either undo the confirmation or that the confirmation order be modified. And then they laid out the terms that they wanted in the modification of the confirmation order. And so from that, Judge Wallace found that since you had requested alternate forms of relief, either this or that, that by going with one of the two that they had requested, that was consent. I'm a little bit astounded that you would suggest that somehow a creditor has voted consent for a plan on a motion to the reconsideration of the confirmation order, which seems to me to be certainly two steps too late. Didn't the judge have to find that there was consent on the day that he confirmed the plan? Well, this was in regards to the modification of the order. So the motion, the reconsideration motion that was made, was cast with two requests for relief, either to undo the confirmation or to modify the confirmation order. And so Judge Wallace elected to go with their request, B, to modify the confirmation order. And that confirmation order, that order granting the motion for reconsideration, did specify that what they were doing was modifying the confirmation order. So, Judge Ferris, I did want to address the issue as to whether or not this was a substantive change or a clarification. So Diamond did submit that order that was ultimately entered by the court. And in that order that was written by Diamond, it does specifically state the confirmation order is modified to make clear, and then it goes through and states that there would be no requirement for an affirmative statement and no effect on the 523AP. So Diamond drafted that order and said what we're doing here is, one, modifying the confirmation order, and, two, clarifying things. You know, on the point about modifying the order, if I remember correctly, the confirmation order said that it takes precedence over any inconsistent provisions of the plan. Yes. Doesn't that really make it part of the plan? In other words, the order and the plan are a package, and therefore modifying the order is a modification of the plan because they're really one and the same? Well, Judge Ferris, that's a very interesting observation. I would tell you that that might actually be direct on point into the Orange Tree case. So as this court has recognized, Orange Tree is a Ninth Circuit case, not a BAP case, an actual Ninth Circuit case. And in that, the court went through and said, look, when you issue an order that was a modification order, what you have done here is you made a couple changes to what was going on. And so in Orange Tree, the changes that were made in that case included even the removal of liens. So they hold that some of the elements that were made in that modification of the confirmation order may have been housekeeping. But that was certainly a substantive matter. And so in Orange Tree, you had a situation where the court had confirmed a plan, and then they'd entered an order that modified the confirmation order. And then Orange Tree looked at it and said, hey, we're not making a change to the plan. This is not a modification under Title 11, under Chapter 11. This is a modification of an order, and that modification of the order is very similar to what happened here. So in this case, Diamond's treatment in the confirmation was treatment A. After the modification order, it's still treatment A. So it's not like they – But it's not exactly A because they also have the 523 case carved out. It really is A plus something, right? And that would be somewhat similar, Judge Ferris, to when Orange Tree goes through and removes liens. So we're dealing with a particular creditor that's before the court and what's going on with them. So, again, in that case, what you're doing is you're saying, hey, if we're going to make a modification, the bankruptcy code allows for modification, but the requirements under 1127 to make a modification and the additional things required on it by Rule 3019 require a whole bunch of stuff. One thing that's very significant here is that motion for reconsideration never even raised 1127 as a modification of the plan. It's not found in the request for relief in that motion. It's not found in the table of authorities in that motion or supporting brief. I don't see how you can modify a plan without going through 1127. Well, I think that's kind of the point. We didn't modify the plan because we didn't – Well, but you modified the order, and the order is part of the plan because the order says so. Well, Judge Ferris, except for the fact that Orange Tree says that you can modify the confirmation order without it being a modification of the plan. I don't know whether the order in that case incorporated – was incorporated or superseded the plan by its terms. I just don't know. I guess I wouldn't know that either as far as being able to know the factual nuances of that specific particular provision. But I do think it's probably a mistake to say, hey, since we modified the plan, we must have complied with 1127. Well, I think it's perfectly possible that you modified the plan without complying with the statute. I think you just did. We'd be out of work if that's – In the same way you've confirmed the plan without complying with the requirements for confirmation of a Chapter 11 plan. Well, Judge Ferris, I think what – This is the classic example that I've learned in law, that when something is messed up in the first instance, you really need to go back and fix it from the beginning as opposed to then patch on other fixes. And that's what's happened here. We've patched on another fix, haven't we? We modified – we've confirmed an unconfirmable plan, and then we modified it without complying with the statute dealing with modifications. Isn't that what we're dealing with here? Well, Judge Kurtz, I don't think so because I don't believe that there was a modification of the plan. There's a modification of the confirmation order. The request that was even given, and, again, the order that was written by Diamond and ultimately executed by Judge Wallace – So you say it's just a clarification. So explain to me what was clarified. Okay, so what was clarified and what the order said is it's to make clear that, and then the two items that were highlighted there were that there would be no requirement for an affirmative statement from the creditor. And then the second thing was that there would be no effect on the 523 action that was pending. I don't see how that's a clarification rather than a change because if you're in treatment A, you've got to make the affirmative statement, and you lose the non-discharge case. That strikes me as not a clarification. Well, I suppose it would be a clarification in the same way that in Orange Tree they removed a lien and said we're dealing – I mean, it's possible for that to be a clarification if the order says, for example, liens come off but didn't identify them. There was something in the Orange Tree case about how they made the change to make a title company happy. So I got the impression that it wasn't identified with enough specificity to make the title company comfortable in ensuring title free of those liens. That's me reading between the lines, I will admit. But I can imagine a situation where that is just a clarification and not a change. Well, and you can certainly clarify something that's substantive. I mean, they're not mutually exclusive, I don't think. You know, I've got another – I'm stuck trying to find a rule here, and I don't know if what I'm going to say helps either one of you guys. But I'm searching – the need to make whatever you do to a plan very public and very universal to me derives from the fact that we change all kinds of people's rights through plans. Now, I don't suspect that – on the one hand, that didn't happen here. The party's rights that were changed were really just the appellant's, right? Anybody else's rights change? No, sir. I mean, not directly, certainly, right? I mean, going forward with the 523 may ultimately impact a lot of people's rights, but not in any way that you were expressly trying to do through the plan. Diamond received unique treatment. Okay. So, I mean, that suggests to me that maybe what happened here wasn't substantive in the way we would ordinarily think of what happens with plans, but it was pretty darn important to them. And it was – and as Judge Ferris just suggested, the two clarifications to me seem like really fundamental changes. So, I mean, I'm struggling with what ought to be substantive here and how do we think about what's substantive. And, you know, if it's substantive to one party, is that what we're talking about? Or are we talking about something that, you know, if we're really going to think about 1127, you know, we ought to be worried about effects on lots of parties, which wasn't – just isn't the case here. And that's your side of this is that, you know, this really wasn't a modification in any meaningful way because everybody else – they didn't show up because they didn't care, honestly. So, Judge Lafferty, that is correct. So, what I would say to you – So, what do I do? Well, I would encourage the court to find that this was not a modification of the plan, and that is critical for the issue before the court because if it's not a modification of the plan, then the 180-day deadline was blown. So, the statute of limitations is very brief – I mean, really brief, 180 days. There's a policy reason for that. You've got to have finality in a Chapter 11 plan. You might have a Chapter 11 plan that goes for decades. Can I ask you a question about that? Did anyone raise the issue of whether the fraud that was alleged here was sufficient under the – it's fraud in the procurement of the plan. Yeah. Is this – was anything ever alleged that there was fraud in the procurement of the plan? So, this is, of course, an interlocutory appeal, and the diamond has made all kinds of scandalous allegations, none of which have been proven, and we would highly dispute all of those. So, the proof elements and things that have been introduced in that regard hadn't even got out of the gate because we killed this with a 12B6. So, it's just not before us? That's correct. So, the 12B6 blowing the statute ended it. So, everything else then became moot, and there were no factual findings on that. I will say that the AP that's pending now was cast with two theories. The first was a revocation of the confirmation. The second is for just general damages based on fraud in the procurement. That second matter is still pending, although the court has stayed that based upon what happens here. Thank you, counsel. Yes, sir. Thank you. I realize you're being very polite. And, again, that's just my military life. Thank you for your service. At ease. Three minutes and 27 seconds. I am not at ease yet. May it please the court again. Doug Flau from Aaron Fox on behalf of the appellant here. I heard a couple of things that I want to go back to and just focus the court in Orange Tree. Much was made that, look, Orange Tree took away a lien or something. Read Orange Tree very closely. I don't think it did. It said, according to Orange Tree, it differs, the modified order differs from the original order in that it explicitly discharged liens other than this lien of New West. And then later down it says, look, neither the plan nor the June 6th confirmation order exempts, the original confirmation order exempts any lien from discharge. So they were getting a discharge. They already got the discharge. This is a clarification, not a substantive modification. And then they further go down and say, these are housekeeping matters. That's a quote from Orange Tree. They could and should have been made not by what purported to be a modified order. Again, this is clarification interpretation versus modification. But by an order entered pursuant to provisions of the plan that authorizes the court to carry out the provisions, purposes, and intent of the plan. If you go to any creditor that relied on this plan and ask whether their rights or the plan, the substance of this plan, changed when you took the largest creditor and allowed them to proceed and collect on their non-dischargeability during the 60 months of this plan, they did. There should have been the world's greatest feasibility objection, right? I would think. There was one. If you read the transcript of the January 2017 hearing, I talked about feasibility because I said, look, Your Honor, I get you're glomming on to my alternative prayer, but you have an independent duty to make sure this complies with the code. And when you give us treatment D, all of a sudden, this plan not only doesn't violate cram-down provisions, best interest of creditors, but it's also not the same feasibility that you had back when you thought it was all good. I wondered if reballoting would have been required. I mean, it's such a big change to the underlying economics that why shouldn't the other creditors have another chance to take a look at this? Well, you know, and I sort of made that argument, and I think the judge, and this is why I think it's a little incongruent that the judge said in the 12B6 order, dismissing it, oh, we didn't go through the provisions of 1127. Well, of course, that's my point. When something is messed up initially, the patches don't really fix everything. Because the court did talk about it. Because they don't make sense either. There's a great quote where the court says, where Judge Wallace says, look, this does affect other creditors, and if some other creditor wanted to come in and object to this treatment D, they'd have to get by the waiver argument that they didn't show up after they were noticed with the motion for reconsideration. But if they could get by that waiver argument, Judge Wallace was like, I'll listen to them. So I think 1127 and the notice to creditors was substantially complied with, and I think it's sort of a moot point before this panel because no one appealed that order. But, you know, I think he did a decent job of meeting just enough requirements to satisfy 1127, given that there is no alternative. If you're modifying a plant, it has to be done under 1127. Does the panel have any last-minute questions that they need from me? I think we're done. Thank you very much. Thank you very much. The matter is submitted.
judges: Kurtz, Faris, Lafferty